IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil No. 1:17-cv-00294-RJC

| | |
|---|---|
| STACEY R. BEASLEY,                )<br>                                                    )<br>     Plaintiff,                             )<br>                                                    )<br>v.                                               )<br>                                                    )<br>NANCY A. BERRYHILL,              )<br>Acting Commissioner of Social  )<br>Security,                                   )<br>                                                    )<br>     Defendant.                         )  | ORDER |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 12, 16), and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I.    BACKGROUND

A. Procedural Background

Stacey R. Beasley ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance under Title II and Supplemental Security Income under Title XVI of the Social Security Act ("SSA") on February 21, 2014, alleging a disability onset date of March 15, 2009. (Doc. Nos. 8 to 8-1: Administrative Record ("Tr.") at 9). Her applications were denied first on July 14, 2014, (Tr. 140, 144), and

1

upon reconsideration on February 20, 2015. (Tr. 149, 154). Plaintiff filed a timely request for a hearing on April 23, 2015, (Tr. 129), and an administrative hearing was held by an administrative law judge ("ALJ") on September 7, 2016. (Id.).

Following this hearing, the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 9–25). Plaintiff requested a review of the ALJ's decision, but on August 23, 2017, the Appeals Council denied Plaintiff's request for a review. (Tr. 1). After having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the SSA. (Tr. 23). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on March 15, 2009 due to a combination of physical and mental impairments.[2]

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that

---

[1] Under the SSA, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).
[2] These alleged impairments were neuropathy, chronic back pain, obstructive sleep apnea, cataracts, chronic bronchitis, depression, anxiety, and post-traumatic stress disorder, and borderline personality disorder. (Tr. 740, 861, 872–73).

Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 25). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5) if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite her limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do"). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 24–25).

In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical and mental

impairments,[3] and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 11–12). Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform light work . . . except she can stand and walk for a total of four hours and sit for a total of six hours in an eight-hour workday . . . . The claimant can perform simple, routine, repetitive tasks for two-hour segments, and she can tolerate occasional contact with coworkers, supervisors, and the public.

(Tr. 13). Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 23). Therefore, the ALJ proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in her RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 24–25). To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform three jobs that existed in significant numbers in the national economy: "marker, routing clerk," "general office clerk" (Correct DOT Title for this job is "document preparer, microfilming"), and "addresser." (Tr. 24). According to the DOT, the document preparer job[4] requires a

---

[3] The severe impairments the ALJ determined Plaintiff suffered from were arthralgias, asthma, PTSD, major depressive disorder, and cluster A personality traits. (Tr. 11).
[4] DOT 249.587-018, 1991 WL 672349.

4

Reasoning Level of 3, and the router[5] and addresser[6] jobs both have a Reasoning Level of 2. (Tr. 24–25). The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's applications for Title II and Title XVI benefits were denied. (Tr. 24–25).

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

---

[5] DOT 222.587-038, 1991 WL 672123.
[6] DOT 209.587-010, 1991 WL 671797.

5

In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome–so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff alleges that the ALJ made two errors: (1) the ALJ failed to identify and question the VE about apparent conflicts between the VE's testimony and the DOT, and (2) the ALJ, in his RFC assessment, failed to explain how he found that Plaintiff is able to perform tasks for two hours at a time. The Court finds these arguments meritless and addresses each allegation of error in turn.

A.  The ALJ properly relied on the VE's testimony

Plaintiff asserts that the ALJ erred by not identifying or resolving apparent conflicts between the DOT and the testimony of the VE.  The Court disagrees.

In Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015), the Fourth Circuit held that the ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT.  Pearson elevated the ALJ's responsibility in addressing apparent conflicts.  Now, an ALJ cannot rely unquestioningly on a VE's testimony; instead, an ALJ must ask the VE whether his or her testimony conflicts with the DOT.  Id. at 208.  And even if the VE answers that no conflicts exist, the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Id. at 208–10.  This means that the ALJ must identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209.

Here, the VE identified three jobs that Plaintiff could potentially perform: (1) "marker, routing clerk," (2) "document preparer, microfilming," and (3) "addresser." (Tr. 24).  First, regarding the addresser job, Plaintiff alleges that there was an apparent conflict between the VE's testimony that 7,400 "addresser" jobs exist nationwide and information from a Social Security employee's PowerPoint presentation which raised doubts about the job existing in significant numbers in the economy. (Doc. No. 13 at 6–7 (citing https://www.ssa.gov/oidap/Documents/PRESENTATION--TRAPANI%20AND%20HARKIN--OIDAP%2005-04-11.pdf)).  The Court is unaware

of any requirement that an ALJ must resolve an apparent conflict between the VE's testimony and information from a Social Security employee's PowerPoint presentation. Therefore, the Court declines to recognize this as an apparent conflict warranting remand under Pearson.

Second, Plaintiff alleges that an apparent conflict existed between limiting Plaintiff to no greater than occasional contact with supervisors, coworkers, and the public and the DOT. Plaintiff is wrong. As this Court has previously held, when the DOT is silent on an issue—here, the level of contact required to perform a certain position—generally, no apparent conflict exists. Corvin v. Berryhill, No. 5:17-CV-92, 2018 WL 3738226, at *6 (W.D.N.C. Aug. 7, 2018) ("If anything, when 'the DOT is silent, an ALJ has greater leeway to rely on the experience and testimony of a VE.'" (citing Gordon v. Berryhill, No. 3:16-CV-130, 2017 WL 5759940, at *4 (W.D.N.C. Nov. 28, 2017)). The Court finds no apparent conflict exists here.

Third, Plaintiff alleges that an apparent conflict existed between limiting Plaintiff to performing simple, routine, repetitive tasks and finding that Plaintiff is capable of performing jobs requiring Reasoning Levels 2 and 3. According to the DOT, the document preparer job requires a Reasoning Level of 3, and the router and addresser jobs both have a Reasoning Level of 2. The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to

8

carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. And Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." Id.

Recently the Fourth Circuit has held that an apparent conflict exists "between a limitation to 'short, simple instructions' and a need to carry out "detailed but uninvolved . . . instructions' jobs (as found in jobs requiring Level 2 Reasoning)." Thomas v. Berryhill, 916 F.3d 307, 313–14 (4th Cir. 2019), as amended (Feb. 22, 2019). However, in this case, Plaintiff has no limitation comparable to the limitation which the Fourth Circuit found problematic in Thomas. Unlike in Thomas, the ALJ did not recognize that Plaintiff had any limitations in her ability to follow or comprehend instructions that needed to be accounted for in the RFC. The doctor who performed Plaintiff's consultative psychological examination, Dr. Mary Berg, opined that while Plaintiff would have moderate difficulties in her "ability to relate to others and tolerate the stress and pressure with day-to-day work activity," Plaintiff "would have only minimal difficulties understanding, retaining, and following instructions." (Tr. 17). The ALJ gave great weight to Dr. Berg's opinion because it was based on a comprehensive examination and was consistent with other record evidence. (Tr. 22). Dr. Deborah Bennett, another consultative psychological examiner who examined Plaintiff, noted that, upon observation,

9

Plaintiff "demonstrated normal expressive and receptive language skills, and she did not display any difficulty understanding the questions she was asked." (Tr. 18). Dr. Bennett also reported that Plaintiff's "thought processes and abstraction skills were within normal limits, while her judgment and insight appeared to be fair." (Id.). Importantly, she noted that Plaintiff "was able to understand, retain, and follow instructions." (Id.). The ALJ gave some weight to these findings of Dr. Bennett because it was generally consistent with her clinical findings as well as other record evidence. (Tr. 22). The ALJ gave little weight to the only opinion which found that Plaintiff had marked limitations in her ability to carry out simple or detailed instructions. (Tr. 19). This was because the opinion was from a licensed clinical social worker, who is not an acceptable medical source, and his opinion was inconsistent with the bulk of record evidence. (Tr. 22).

Therefore, in light of the medical evidence of record, the ALJ did not include any limitation in Plaintiff's RFC regarding short and simple instructions because he found that Plaintiff had no such limitations for which to compensate: "[a]lthough the record lacks consistent complaints or clinical evidence of concentration or memory deficits, the undersigned finds the combination of the claimant's impairments would limit her to simple, routine, repetitive work . . . ." (Tr. 22). The Court finds that a meaningful difference exists between a limitation to *perform* only simple, routine, repetitive tasks—Plaintiff's RFC limitation here—and a limitation to only receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to *perform* certain job

10

tasks while the second limitation accounts for a claimant's ability to *comprehend* job tasks. Thomas is distinguishable from the case at bar.[7] Moreover, this Court has consistently held that no apparent conflict exists between a limitation to perform simple, routine, repetitive tasks and jobs with Reasoning Level 2 or higher.[8]

Finally, Plaintiff attempts to argue that the Occupational Outlook Handbook ("OOH") documents that the jobs identified by the VE do not involve simple, routine, repetitive tasks. However, district courts in North Carolina have

---

[7] This Court recently rejected Plaintiff's argument, and the Court's decision today is consistent with that decision:

> Plaintiff's RFC does not limit the number of instructions Plaintiff is able to follow, resulting in no apparent conflict for the ALJ to identify. The Court acknowledges that the Fourth Circuit in Thomas v. Berryhill has held an apparent conflict arises between an RFC of "short, simple instructions" and "detailed but uninvolved . . . instructions" in jobs requiring Level 2 reasoning. Thomas v. Berryhill, No. 17-2215 at *9 (4th Cir. 2019). Here, Plaintiff's RFC of "simple, routine, repetitive tasks" does not conflict with the DOT definition of Level 2 reasoning.

Kiser v. Berryhill, No. 3:17-CV-00739, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019).

[8] See, e.g., Walters v. Berryhill, No. 3:17-CV-538, 2018 WL 7200665, at *6 (W.D.N.C. Nov. 5, 2018), report and recommendation adopted, No. 3:17-CV-00538, 2019 WL 427330 (W.D.N.C. Feb. 4, 2019); Wilhelm v. Berryhill, No. 5:17-CV-00138, 2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) ("Therefore, no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); Gaston v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at *4 (W.D.N.C. Aug. 15, 2018); Corvin v. Berryhill, No. 5:17-CV-92, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) ("Reasoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)).

repeatedly rejected claims that an ALJ must resolve any apparent conflicts between VE testimony and publications other than the DOT.[9] The Social Security Regulations only require the ALJ to identify and resolve apparent conflicts between the VE's testimony and the DOT, not other administrative materials. Spurlock, 2018 WL 791302, at *8 (observing that, apart from the DOT, "SSR 00-4p d[oes] not impose a similar requirement [that the ALJ identify and resolve] conflicts between VE testimony and the other documents administratively noticed in 20 C.F.R. § 416.966(d)" (quoting Walker v. Berryhill, No. CV 16-01040, 2017 WL 1097171, at *3 (C.D. Cal. Mar. 23, 2017))). The Court does not find that the ALJ has an affirmative duty to seek out and resolve apparent conflicts between the VE's testimony and the OOH when the VE did not rely on OOH for the VE's conclusions. See Nguyen v. Colvin, No. SACV 13-01338, 2014 WL 2207058, at *3 (C.D. Cal. May 28, 2014) ("[I]t is immaterial whether Plaintiff's RFC is compatible with the requirements of her past relevant work as determined by O*NET because the VE did not consult that source. Rather, the VE relied upon the DOT . . . ."). In sum, the Court rejects Plaintiff's first allegation of error and finds that no apparent conflicts existed under Pearson.

---

[9] See, e.g. Street v. Berryhill, No. 1:17-CV-00204, 2018 WL 1935866, at *6 (W.D.N.C. Apr. 24, 2018) (citing Best v. Berryhill, No. 4:16-CV-268-D, 2017 WL 6626320 (E.D.N.C. Dec. 28, 2017) and Spurlock v. Berryhill, No. 1:17-CV-411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018), report and recommendation adopted, No. 1:17-CV-411, 2018 WL 4931610 (M.D.N.C. Mar. 21, 2018)).

B.   The ALJ did not err in forming a logical bridge between the record and Plaintiff's limitation to simple, routine, repetitive tasks for two-hour segments.

Plaintiff argues that the ALJ failed to form a logical bridge from the evidence to the conclusion, included in the RFC assessment, that Plaintiff could do simple, routine, repetitive tasks for two-hour segments. Specifically, Plaintiff argues that the ALJ merely made a conclusory statement that Plaintiff could sustain her attention for two hours at a time without any explanation of what evidence was used to reach this conclusion.

Citing Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Plaintiff claims that the ALJ did not explain how this two-hour limitation was reached. Plaintiff is correct that Mascio states that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. at 636 (quoting SSR 96-8p). However, Plaintiff fails to recognize that Mascio rejected a per se rule requiring remand if the ALJ fails to perform an explicit function-by-function analysis. Id. A more accurate description of Mascio's holding is

> when an ALJ finds moderate limitation in CPP, the ALJ must *either* adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) *or* explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task."

Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016).

Here, the Court finds that a two-hour limitation addressed Plaintiff's moderate limitations in CPP. This is consistent with other courts' conclusions.[10] Because the ALJ's limitation of two-hour work segments addressed the moderate CPP limitations, the Court does not find reversible error in the ALJ's failure to address Plaintiff's ability to complete a full workday. As for how the ALJ determined that Plaintiff could perform two-hour work segments, the Court notes that this limitation was based on the moderate CPP limitation. Furthermore, Plaintiff fails to point to conflicting evidence in the record to suggest that Plaintiff

---

[10] Neyer v. Comm'r, SSA, No. SAG-14-3343, 2015 WL 5773239, at *2, 2015 U.S. Dist. LEXIS 131031, at *9 (D. Md. Sep. 29, 2015) ("Based on the parameters of Mascio, 780 F.3d 632, I find that the ALJ adequately accounted for [the claimant's] moderate limitation in concentration, persistence, or pace by limiting her to performing simple tasks in two-hour increments. By limiting the sustained duration of Ms. Neyer's work to two hours, the ALJ adequately accounted for her limited ability to stay on task."); Owens v. Comm'r, SSA, No. SAG-14-3692, 2015 WL 5052688, at *4, 2015 U.S. Dist. LEXIS 112107, at *11-12 (D. Md. Aug. 24, 2015) ("I find that the inclusion of these limitations adequately distinguishes this case from [Mascio], because Mr. Owens's moderate difficulties in concentration, persistence, or pace were specifically addressed by the finding that he is able to perform simple tasks in two hour increments. Thus, the hypothetical was not wanting for limitations to address Mr. Owens's ability to maintain focus or stay on task."). But see Steele v. Comm'r, Soc. Sec., No. MJG-15-1725, 2016 WL 1427014, at *4, 2016 U.S. Dist. LEXIS 48744, at *13 (D. Md. Apr. 11, 2016) ("The Fourth Circuit was clear that restriction to simple, routine, and repetitive tasks does not adequately address a claimant's ability to stay on task. Mascio, 780 F.3d at 638. While the ALJ also includes a limitation to performing tasks in two hour increments, this limitation does not account for any breaks in addition to those encompassed by a normal workday.").

could not maintain CPP with this limitation. Such a showing is required to warrant remand. Mascio, 780 F.3d at 636 ("Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record . . . .").

## IV. CONCLUSION

In sum, the Court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 16), is **GRANTED**; and
3. The Clerk of Court is directed to close this case.

Signed: March 25, 2019

Robert J. Conrad, Jr.
United States District Judge